UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

IN RE:
KIMBERLY MICHELLE EDWARDS

Chapter 7

Debtor

Case No. 05-23528

APPEARANCES:

Zenas Zelotes, Esq.
    Zenas Zelotes LLC
    P.O. Box 7123, Groton, CT 06340
    Counsel for Debtor

Bonnie C. Mangan, Esq.
    The Law Office of Bonnie C. Mangan, P.C.
    1050 Sullivan Avenue, Suite A3, South Windsor, CT 06074
    Chapter 7 Trustee

## RULING ON TRUSTEE'S MOTION FOR TURNOVER
## OF PROPERTY OF THE ESTATE

KRECHEVSKY, U.S.B.J.

I.

In this proceeding, Bonnie C. Mangan ("the trustee"), Trustee of the Chapter 7 estate of Kimberly Michelle Edwards ("the debtor") has filed a "Motion for Turnover of Property of the Estate" seeking the sum of $3,820.07 from the debtor. The parties submitted the matter to the court on a stipulation of facts ("the stipulation") and memoranda of law.

II.

BACKGROUND

The stipulation states the following:

1. The Debtor filed a voluntary Chapter 7 petition on October 3, 2005.
2. On October 3, 2005, Bonnie C. Mangan was appointed as Trustee in the case.
3. The Debtor scheduled approximately $14,425.27 in unsecured debts on Schedule F of her petition.
4. The Debtor's Section 341 meeting that was held on November 10, 2005. At the meeting the Trustee asked the Debtor if she was entitled to a tax refund for 2005.
5. The Debtor did not schedule a 2005 tax refund on her bankruptcy schedules.
6. The Debtor testified that she thought she would receive a 2005 tax refund but was not certain of the amount of the refund.
7. At the Section 341 meeting the Trustee put the Debtor on notice that all or part of the tax refund might be property of the estate.
8. On January 11, 2006, the Debtor amended her bankruptcy schedules to disclose a 2005 tax refund with a value of "TBD" and claimed an exemption in the amount of $374.21.
9. The Debtor used Connecticut General Statutes Section 52-352 et seq. to exempt property from the bankruptcy estate.
10. The Debtor received her discharge on January 16, 2006.
11. On January 21, 2006 the Trustee sent a letter to the Debtor and her counsel requesting a copy of the 2005 tax return and directing the Debtor to turn over her refund to the Trustee.
12. The Debtor and her non Debtor spouse filed their 2005 joint tax return on or about February 4, 2006.
13. On February 9, 2006 the Trustee was provided with an "H&R Block Advantage" cover sheet showing that the IRS would issue a $9,699.00 refund to the Debtor and her non Debtor spouse for 2005 and that the State of Connecticut would issue a $407.00 refund to the Debtor and her non Debtor spouse.
14. On or about March 24, 2006, the Debtor and her non Debtor spouse filed an "Injured Spouse Allocation" Form 8379 with the Internal Revenue Service which allocated a majority of the tax refund to the non Debtor spouse.
15. On or about July 27, 2006 the Debtor and her non Debtor spouse received a check in the amount of $8,677.08 from the Department of the Treasury and deposited said funds into a joint account at American Eagle Federal Credit Union.
16. On or about October 31, 2006 the Trustee received $1,231.01 from the Internal Revenue Service on behalf of the Debtor in connection with her 2005 tax refund.
17. The Debtor and her non Debtor spouse have filed joint tax returns since 2000.
18. The Debtor and her non Debtor spouse received the following refunds: 2000: $9,625.00; 2001: $9,567.00; 2002: $9,910.00; 2003: $9,538.00 and 2004: $10,649.00.
19. The only time that the Debtor and her non Debtor spouse made an "Injured Spouse Allocation" claim in connection with a joint tax return was in 2005.
20. The Debtor and her non Debtor spouse do not have any legally enforceable past due debts for federal taxes, state taxes, child support, spousal support or other

      federal non tax debt such as student loans.

21. On October 3, 2005, neither the Debtor nor her non Debtor spouse were under a legal obligation to file a "joint" 2005 tax return; both the Debtor and her non Debtor spouse could have filed separate 2005 tax returns (had they so elected).

22. Of the $12,798.00 withheld in 2005 (as reflected on Line 71 of the 2005 Form 1040): the non Debtor spouse contributed $12,615.00; whereas the Debtor contributed $183.00.

### III.

### ARGUMENTS OF THE PARTIES

The trustee calculated the initial turnover request of $3,820.07 as follows:

> The filing date of October 3, 2005 was 276 calendar days into the year. The estate would therefore be entitled to 0.756% [sic] of the refunds (276/365), or $10,106.00 x 0.756 which equals $7,640.13. The figure of $7,640.13 was then divided by two because the estate would have a claim to fifty (50%) percent of the refund, which sum equals $3,820.06.

(Tr. 12/7/2006 Mem. at 2.)

The trustee now requests is $2,588.97 in light of her receipt of $1,231.01 from the Internal Revenue Service ("the IRS"). (See Stipulation ¶¶ 14-16.) The trustee urges the court to conclude: (1) that "a joint refund is owned by the spouses equally;" or (2) that a joint tax refund is "jointly owned unless a different ownership allocation can be shown by court order or an enforceable written prepetition contract between the parties;" and (3) that "the Debtor's conduct in connection with the 'Injured Spouse Allocation' form" be held sanctionable because it was filed "solely for the purpose of avoiding the Trustee's turnover request." (Motion at 12-13.)

The debtor argues (1) "apportionment issues are relevant only in instances where a joint tax return is filed <u>before</u> commencement" of the bankruptcy case; and (2) if relevant, the joint tax refund should be allocated in accordance with the

3

percentage each spouse contributes to the couple's total withholding. (Debtor's Amended Reply Brief. at 1-5 (citing In re Boudreau, 350 F.Supp. 644 (D.Conn. 1972))

III.

## DISCUSSION

"The commencement of a case ... creates an estate .... comprised of all ... property, wherever located and by whomever held ... [including] all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a). Such estate includes the debtor's interest in any income tax refund based on prepetition income and withholding. See Kokoszka v. Belford, 417 U.S. 642, 647-48, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974). The question presented in this proceeding is how to determine the extent of the estate's interest in a refund of an overpayment of income tax withholding when the debtor and her non-debtor spouse file a joint income tax return.[1]

"Three approaches have developed concerning this dilemma. The majority approach ... holds that .... [a debtor or] non-debtor spouse is only entitled to keep the portion of the tax refund attributable to [his or] her tax withholdings. A second approach divides the tax refund between the debtor and non-debtor spouses based on each's income. The third approach ... splits the tax refund equally between the spouses regardless of tax withholdings or income." In re Kleinfeldt, 287 B.R. 291, 292-93

---

[1] The funds the trustee received from the IRS were apparently based upon IRS Form 8379. The parties have stipulated (Stip. ¶20) that their circumstances have nothing to do with the purposes of Form 8379. Accordingly, the court will ignore the IRS allocation of the tax refund amounts that were sent to the trustee and directly to the home of the taxpayers in arriving at the court's conclusion as to the estate's interest in the tax refund.

4

(B.A.P. 10th Cir. 2002) (citations omitted).

The Connecticut District Court, in dealing with the tax refund issue under the Bankruptcy Act of 1898, arrived at a conclusion that comports with the majority view. See In re Boudreau, 350 F.Supp. 644. In Boudreau, the debtor refused to turn over a tax refund to the trustee, contending his non-debtor spouse was entitled to a one-half interest in the refund resulting from a joint tax return, despite the non-debtor spouse not having worked during the tax year. The district court stated:

> Clearly state law governs the issue of the wife's property interest in the tax refund check.... [T]he statute governing property rights of husband and wife, Conn. Gen. Stat. [presently §46b - 36] emphasizes the independence of each. It provides, 'Neither husband nor wife shall acquire by the marriage any right to or interest in any property held by the other before or acquired after such marriage...' except survivor benefits.... The [tax] law, while providing certain benefits in the filing of a joint return and imposing certain liabilities, does not go so far as to change the ownership of any property between the husband and wife. The filing of the joint return, therefore, did not vest in the wife, any title to any part of the tax refund.... We must look not to the check for the tax refund, but to the actual earnings and withholdings from the wages of husband and wife to determine what part of the refund should belong to each.

Id. at 345-46. The Second Circuit Court of Appeals has similarly held:

> The filing of joint tax returns does not alter property rights between husband and wife. See Zeeman v. United States, 395 F.2d 861, 865 (2d Cir.1968). In particular, the filing of a joint return does not have the effect of converting the income of one spouse into the income of another. See, e.g., McClelland v. Massinga, 786 F.2d 1205, 1210 (4th Cir.1986) ( "[T]he mere filing of a joint tax return by a husband and wife does not render the property taxed or the tax paid joint property.").

Callaway v. Commissioner, 231 F.3d 106, 117 (2d Cir. 2000).

The court concludes that the majority approach of allocating the tax refund in proportion to the income tax withholdings of each spouse appropriately reflects Connecticut property law. The second approach, allocating the refund in proportion

5

Case 05-23528  Doc 38  Filed 02/02/07  Entered 02/02/07 14:39:18  Desc Main
Document  Page 6 of 7

to the total income earned by each spouse, may bear little relationship to the contribution of each spouse toward the overpayment which results in a refund. Those courts following the third approach, under which each spouse is entitled to one-half of the refund, have reasoned that such an approach mirrors the "equitable distribution" of marital property in a divorce proceeding, which may properly take into account the non-financial contributions of a non-working spouse. See, e.g. In re Barrow, 306 B.R. 28 (Bankr. W.D.N.Y. 2004); In re Hejmowski, 296 B.R. 645 (Bankr. W.D.N.Y. 2003); In re Aldrich, 250 B.R. 907 (Bankr. W.D.Tenn. 2000). However, "it is state property law, not domestic relations law, that is applicable for purposes of [Bankruptcy Code] §541(a)." In re Lock, 329 B.R. 856, 859 (Bankr. S.D.Ill. 2005).

IV.

CONCLUSION

Applying the court's conclusion, that the tax refund be apportioned in accordance with the amounts withheld from each spouse's earnings, to the trustee's calculations:

> The filing date of October 3, 2005 was 276 calendar days into the year.
>
> The estate would therefore be entitled to 75.6% of the refunds (276/365), or $10,106.00 x 0.756 which equals $7,640.13. The figure of $7,640.13 is then allocated in proportion to each spouse's withholding, with the estate being entitled to the debtor's share of $7,640.13 multiplied by $183 / $12,798, which equals $109.25.

Accordingly, the trustee's motion is denied and trustee shall remit to the non-debtor spouse the sum of $1,121.76, which equals the excess of the $1,231.01 the trustee

received from the IRS over the $109.25 which is property of the estate. It is

SO ORDERED.

Dated at Hartford, Connecticut this 2 day of February, 2007.

_____
ROBERT L. KRECHEVSKY
UNITED STATES BANKRUPTCY JUDGE